UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:  PALACE THEATER LLC,                                    Case No. 21−11714

Debtor.                                                        Chapter 11

**OBJECTION OF KRAEMER BROTHERS, LLC TO DEBTOR PROCEEDING UNDER SUBCHAPTER V AND MOTION OF KRAEMER BROTHERS, LLC FOR OR CONVERSION OF CASE TO CHAPTER 7**

Kraemer Brothers, LLC ("Kraemer") objects to Palace Theater, LLC ("Palace" or "Debtor") proceeding under Subchapter V of Chapter 11 of the Bankruptcy Code because at the time of filing the petition, Debtor's primary activity was the business of owning single asset real estate thereby precluding Debtor from proceeding under Subchapter V.  Kraemer also moves the Court to dismiss this Chapter 11 case or convert it to Chapter 7 for cause because of continuing losses and no reasonable prospect of rehabilitation or for lack of good faith in filing the petition given the facts and history of this Debtor.  In support of its Objection and Motion, Kraemer respectfully alleges as follows:

**Background**

1.     Debtor purchased the theater property located at and generally known as 564 Wisconsin Dells Parkway, Lake Delton, Wisconsin (the "Property") from Kraemer in 2014.  Kraemer financed the sale of the Theater to Palace pursuant to a promissory note dated June 27, 2014 in the amount of $3,525,000.00 which is secured by a mortgage in favor of Kraemer on the Property.

2.     In the seven years since Palace acquired the Property, Palace paid Kraemer only $108,031.25 on the note.  Palace could not operate profitably long before the COVID-19 pandemic

1

and Palace's effort to attribute its financial problems to the covid pandemic is a false narrative. This is also evident because Palace could not collect rent from its affiliated tenant 94 North Productions, LLC ("94 North"). Instead Palace allowed 94 North to accumulate a rent payable obligation of at least $1,698,750.63 (Schedule A/B, #11). At a lease payment of $18,606.25 (base rent per month, *see* Debtor's Schedule G, #2.1), this accumulation represents 91 months or 7.5 years of rent. The Debtor also owes at least $405,578.16 in accrued priority real estate taxes (Doc. 1, Schedule D, #2.4).

3. Eventually, and after its over-abundance of patience was exhausted, Kraemer filed an action in the Sauk County Circuit Court (Case Number 20-CV-259) against Palace, 94 North, and other defendants (the "Sauk County Case"). On July 7, 2021, judgment in the Sauk County Case was entered and docketed in the amount of $5,543,086.98 and the foreclosure and sale of the Property was ordered (the "Judgment"). The sheriff's sale of the Property was scheduled for August 17, 2021, the day after the bankruptcy petition was filed.

4. Section 8 of the petition alleges that Palace is a debtor under 11 U.S.C. § 1182(1) and that Palace is proceeding under Subchapter V. However, Palace's primary activity when it filed its petition, and for the seven years prior, was the business of owning single asset real estate. While the Debtor, with its affiliate 94 North, attempted to avoid this conclusion by manufacturing a totally unrealistic transaction dated the same day that the petition was filed, that attempt fails because it is a sham and no business as to that transaction was conducted until weeks after the petition was filed. Therefore, the Debtor is not qualified to proceed under 11 U.S.C. §1182(1) and the Court should find that Palace owns single asset real estate and is ineligible to proceed under Subchapter V.

5. The only substantial creditor the Debtor is trying to affect with the filing of its petition is Kraemer. The Debtor's schedules show it has few unsecured creditors whose claims are relatively small compared to the secured creditors. The Debtor has few employees. The Property is subject to a foreclosure action from non-payment for many years (including 5 or 6 years prior to the covid pandemic), and the petition was filed for the sole purpose of hindering, delaying, and frustrating Kraemer's legitimate efforts to pursue its remedies to collect on the Judgment. These are the hallmarks of lack of good faith as to single asset real estate. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). The Debtor's reliance upon a sham transaction to attempt to avoid the single asset real estate conclusion also evidences lack of good faith. There is also a substantial and continuing loss or diminution of assets from the estate, and there is no reasonable likelihood of rehabilitation. Therefore, this case should be converted to Chapter 7.

### Parties, Jurisdiction and Venue

6. The Debtor filed its bankruptcy petition for relief under Chapter 11 of the Bankruptcy Code on August 16, 2021 (the "Petition Date").

7. This Objection and Motion are contested matters pursuant to Bankruptcy Rule 9014, and are filed by Kraemer (a) pursuant to Rule 1020, to object to the Debtor's statement that it is entitled to proceed as a debtor as defined in 11 U.S.C. § 1182(1) or under Subchapter V of Chapter 11 of the Bankruptcy Code, and (b) for cause, pursuant to 11 U.S.C. § 1112 to dismiss or convert this case, and requests that the Court determine that the Debtor's primary activity is the owning of single asset real estate.

8. The Court has jurisdiction over this matter and over the Debtor pursuant to 28 U.S.C. §§ 157 and 1334.

9.  Venue over this matter is proper in this Court pursuant to 28 U.S.C. § 1409.

10. This Objection and Motion constitute a core proceeding which may be heard and determined by this Court pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A).

11. Debtor is an Illinois limited liability company which owns the Property located at 564 S. Wisconsin Dells Pkwy. S, Wisconsin Dells, WI 53965.

### Relief Requested

**A. Kraemer Objects to Debtor Proceeding Under 11 U.S.C. § 1182(1) Because Palace's Primary Activity Prior to the Petition Being Filed Was the Business of Owning Single Asset Real Estate. Kraemer Requests That Determination and That the Debtor Is Not Eligible To Proceed Under Subchapter V of Chapter 11.**

12. Prior to the Petition Date, 94 North leased the Property from Palace and conducted all meaningful business operations at the Property.

13. On the same day that the petition in bankruptcy was filed by Palace, 94 North purported to sell to Debtor and the Debtor purported to purchase, all furniture, fixtures and equipment utilized by 94 North for the food and beverage operations taking place at the Property. A copy of the Purchase and Sale Agreement is attached as **Exhibit A**.

14. 94 North financed the entire purchase price under a Promissory Note. A copy of the Promissory Note is attached as **Exhibit B**.

15. This was a sham transaction because it was not a transaction that could be expected in a bona fide business setting as no rational seller, knowing that its buyer was immediately filing for bankruptcy would sell any substantial assets entirely on unsecured credit. *See In re Freytag,* No. 390-30082-HCA-7, 1993 WL 471317, at *15 (Bankr. N.D. Tex. Aug. 12, 1993). Significantly, Mr. Tomaska signed the Purchase and Sale Agreement for both the buyer and seller, and also signed the bankruptcy petition, all on the same day. This transaction was also likely a fraudulent transfer under Wis. Stat. Ch. 242 and § 548 of the Bankruptcy Code, committed with

4

the actual intent to hinder, delay, or defraud Kraemer and should be avoided and disregarded for that reason.

16. The Debtor has admitted (at the 341 meeting) that absent the purported purchase of the food and beverage equipment, it is a single asset real estate debtor.

17. If at all, the Debtor began conducting the food and beverage service weeks after the Petition was filed as the only scheduled event in August 2021 listed on the Debtor's online calendar occurred on August 31, 2021.[1]

18. Upon information and belief, as of October 12, 2021, Debtor did not hold, and had never obtained a food service license from Sauk County, and had not obtained a license to sell alcoholic beverages. The only liquor license issued by the Village of Lake Delton with respect to the Property was issued to 94 North. A copy of the liquor license issued to 94 North is attached as **Exhibit C**. Any restaurant or beverage service undertaken by the Debtor is done illegally and without proper licensing or permission from Sauk County or the Village of Lake Delton. *See* Wis. Stat. § 125.04(1)[2]; Wis. Stat. § 97.30(2)(a)[3].

19. Pursuant to 11 U.S.C. § 101(51B), a debtor which meets the following requirements is considered as owning single asset real estate (or SARE): (1) the debtor has real property constituting a single property or project (other than real property with fewer than 4 residential units), (2) which generates substantially all of the gross income of the debtor, and (3) on which no

---

[1] *See* https://www.dellspalace.com/calendar?date=2021-8 (last visited October 13, 2021).
[2] Wis. Stat. § 125.04(1) states: "License or permit; when required. No person may sell, manufacture, rectify, brew or engage in any other activity for which this chapter provides a license, permit, or other type of authorization without holding the appropriate license, permit or authorization issued under this chapter." Wis. Stat. § 125.04(13) states "Any person who violates sub. (1) may be fined not more than $10,000 or imprisoned for not more than 9 months or both."
[3] Wis. Stat. § 97.30(2)(a) states: "Except as provided under par. (b), no person may operate a retail food establishment without a valid license issued by the department or an agent city or county…" Wis. Stat. § 97.30(2)(a) states: Any person who violates any of the provisions of this chapter for which a specific penalty is not prescribed shall be fined not less than $100 nor more than $1,000 or imprisoned for not more than 6 months, for the first offense…"

substantial business is conducted other than the business of operating the real property and activities incidental thereto.

20. Palace satisfies all of these elements as shown above. The Court should therefore find that as of the Petition Date, the Debtor owned single asset real estate and therefore is not eligible to proceed under Subchapter V.

**B.     Conversion of the Chapter 11 Case.**

21. A case under Chapter 11 may be dismissed or converted for cause pursuant to section 1112 of the Bankruptcy Code. "Cause" includes many things as listed in § 1112(b)(4), including substantial and continuing losses and the absence of a reasonable likelihood of rehabilitation. "Cause" also includes a petition that was not filed in good faith. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988); 7 Collier On Bankruptcy, ¶ 1112.07[5] (16th Ed.).

22. In this case, cause exists as there is, upon information and belief, substantial or continuing loss to and diminution of the estate, because the Debtor continues to operate at a loss, is incurring large administrative and other expenses, and 94 North still fails to pay any rent (any rent received would be Kraemer's cash collateral, and the Debtor has not requested the use of cash collateral).

23. Cause also exists as the petition was not filed in good faith. The facts which show lack of good faith in the filing in a single asset real estate case are outlined in *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394, and are as follows:

(a)     the debtor has only one asset, the property at issue;

(b)     the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors;

(c)     the debtor has few employees;

6

(d) the property is subject to a foreclosure action as a result of arrearages on the debt;

(e) the debtor's financial problems essentially are a dispute between the Debtor and secured creditors, which can be resolved or are the subject of an existing court action; and

(f) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*See also Matter of Little Creek Dev. Co.,* 779 F.2d 1068, 1072–73 (5th Cir. 1986).

24. In this instance, the following facts show lack of good faith:

(a) prior to the filing of the petition, Debtor's only asset was the Property. The Debtor's purchase of the food and beverage service tangible assets was a manufactured sham, as the entire purchase price was financed by a related-party seller (94 North) who knew Palace was filing bankruptcy, at the time of filing the petition the Debtor did not possess the necessary licenses to legally operate a food service business or to serve alcoholic beverages, and no food or beverage services were conducted by the Debtor prior to the filing of the petition;

(b) the Debtor has few general unsecured creditors and their claims are small in comparison to the Judgment obtained by Kraemer, which is a secured claim;

(c) the Debtor had few employees when the petition was filed;

(d) The Property is subject to a foreclosure as a result of arrearages on the debt owed to Kraemer;

(e) Debtor's financial problems primarily relate to its inability to make the payments owed to Kraemer; and

(f) Kraemer patiently gave the Debtor <u>six years</u> to rectify its business and become profitable before proceeding with a foreclosure and guarantor action. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Kraemer to enforce its rights, and the bankruptcy petition was filed on the eve of an ordered and advertised foreclosure sale of the Property, for the purpose of stopping the foreclosure.

(g) The governmental grants that the Debtor predicts it will receive will be, at best, a temporary band-aid to pay a small portion of its total indebtedness.

25. The Debtor does not have the ability to reorganize within any realistic period of time as the Property does not generate income sufficient to pay the Debtor's debt to Kraemer, or to the other creditors.

26. A Chapter 11 case "can be dismissed at any time. ... Creditors ... need not incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated. The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless." *See In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).

WHEREFORE, Kraemer respectfully requests that the Court:

(i) hold a hearing on the foregoing Objection and Motion;

(ii) enter an order finding that on and prior to the Petition Date the Debtor's business was owning single asset real estate, and determining that Kraemer's objection to the Debtor proceeding under Subchapter V of Chapter 11 is sustained;

(iii) enter an order converting this case to Chapter 7; and

(iv) grant to Kraemer such other and further relief as may be necessary or appropriate under the circumstances.

Dated this 14th day of October, 2021.

By: */s/ Christopher T. Koehnke*

Christopher T. Koehnke, SBN 1076031
Rhyan J. Lindley, SBN 1038827
VON BRIESEN & ROPER, S.C.
411 E. Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
Phone:  (414) 287-1534
Fax:  (414) 238-6665
ckoehnke@vonbriesen.com
rlindley@vonbriesen.com

Attorneys for Kraemer Brothers, LLC

37035028_1.DOCX