**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In re:  PALACE THEATER LLC, | Case No. 21−11714-rmb |
| Debtor. | Chapter 11 |

**DEBTOR'S: (1) RESPONSE TO OBJECTION OF KRAEMER BROTHERS, LLC TO DEBTOR PROCEEDING UNDER SUBCHAPTER V; AND (2) OBJECTION TO MOTION OF KRAEMER BROTHERS, LLC FOR [SIC] OR CONVERSION OF CASE TO CHAPTER 7**

Palace Theater, LLC, the debtor in the above-captioned chapter 11 case (the "Debtor"), presents the following response to the *Objection of Kraemer Brothers, LLC to Debtor Proceeding under Subchapter V and Motion of Kraemer Brothers, LLC for or [sic] Conversion of Case to Chapter 7*, ECF No. 48, (the "Pleading"), and in support thereof states as follows:

*Background*

1.  The Debtor owns a theater and operates the hospitality portion of the theater while its affiliated entity books the acts and operates the stage performances, all in Lake Delton, Wisconsin. The Debtor's theater is used for live performances of musicians and other performers and provides hospitality to the guests including a full-service bar and dinner theater. The lobby area has a bar, food service counter and sales office. The backstage area features multiple separate rooms including dressing rooms, costume and prop rooms, a workshop area, offices, locker rooms, green room and several changing rooms including with bathrooms. The Debtor owns the real property upon which the theater building is situated, the kitchen and hospitality equipment and associated food, beverage, and soft goods inventory that it uses to serve guests attending the theater and performers and acts performing at the theater.

1

2. Significantly more detail on the Debtor's background and operations is available on the record, including in the Debtor's schedules (ECF No. 1), operating reports (ECF Nos. 40, 57), and *Preconference Report* (ECF No. 41), and the Court's *Proceeding Memo* of the section 1188 conference (ECF No. 46).

3. Since the October 7, 2021 status conference, the Debtor has received written confirmation from the United States Small Business Administration that its second Shuttered Venue Operators Grant ("SVOG") Grant (to 41 North, LLC) in the approximate amount of $535,000 has been awarded and should be deposited in its account shortly, with another $400,000 in grant funding from the Wisconsin Event Venue and Live Event Small Business Grant Program expected in early December. The Debtor's plan is due November 15, and it believes, on the advice of its professionals, that it will be able to propose a confirmable plan based on financial performance through the date of this objection post-petition as well as the projected performance, likewise based on actual acts produced year to date.

### *Procedural Posture*

4. The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 16, 2021. The Debtor's petition indicates that it is a small business debtor and elects to have subchapter V apply. ECF No. 1, 2.

5. Kraemer Brothers, LLC ("Kraemer"), a secured creditor, filed the Pleading seeking a determination that:

> a. The Debtor is ineligible to proceed under subchapter V because it should be designated as a single asset real estate entity, as defined in 11 U.S.C. §101(51B); and
>
> b. The case should be converted to chapter 7 for cause, pursuant to 11 U.S.C. § 1112, including (1) substantial and continuing losses and the absence of a reasonable likelihood of rehabilitation; and (2) lack of good faith.

2

*Argument*

**I.    The Debtor is eligible to proceed under subchapter V.**

6. Kraemer first objects to the Debtor's election to proceed under subchapter V based on its assertion that the Debtor fails to meet the applicable definition of "debtor," which excludes persons whose primary activity is the business of owning single-asset real estate. *See* 11 U.S.C. §1182(a)(A).

7. The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental. 11 U.S.C. § 101(51B).

8. An owner using real property to conduct an active business—rather than holding the property merely as an income-producing investment—is not a single asset real estate debtor as defined in section 101(51B). *See, e.g., In re Larry Goodwin Golf, Inc.*, 219 B.R. 391 (Bankr. M.D.N.C. 1998) (holding that a corporation that owned a golf course which also operated a pro shop, pool, cart rental and concessions did not fall within the scope of section 101(51B)); *In re Whispering Pines Estate, Inc.*, 341 B.R. 134 (Bankr. D.N.H. 2006) (operating a hotel that provided room-cleaning and towel-laundering services, served continental breakfast, maintained a swimming pool, and provided telephone and high-speed internet service was conducting substantial business "other than the business of operating the real property."); *In re ENKOGS1, LLC*, 626 B.R. 860 (Bankr. M.D. Fla. 2021) (Chapter 11 debtor that owned and operated a 79-room hotel, and that, in connection with operating hotel, provided room cleaning and laundry services, internet/wi-fi services, phone, parking and business services, as well as serving complimentary breakfast and maintaining a swimming pool and fitness center, was not a single

3

asset real estate debtor, of kind ineligible for subchapter V relief, regardless of whether it earned any additional income in exchange for providing these services). The facts of each of the above-cited cases are very similar to the Debtor in this case.

9. The cited caselaw interpretation of the single asset real estate term is consistent with legislative history of the 1994 introduction of term's definition in the Bankruptcy Code. Legislative history indicates that single asset real estate refers to property held for passive investment—not property used in an active business enterprise. "We commonly think of a single asset case as one of a debtor with a single apartment house or condo complex or a single piece of real estate. However, this could include a debtor ... such as a real estate investment trust." 138 Cong. Rec. S8241–01, *S8264 (daily ed. June 16, 1992) (statement of Sen. Reid). The Senate Report for the Bankruptcy Reform Act of 1994 further explains that the "definition is limited to investment property of the debtor." S.Rep. No. 168, 103rd Cong., 1st Sess. (October 28, 1993).

10. In this case, the Debtor's operations are not passive. The Debtor provides many services that on a pre-petition basis were performed by its affiliate, 94 North, LLC, but which it has undertaken, along with the ownership of the operating assets, post-petition. These additional operations and services "constitute something more than 'operating the real property and activities incidental hereto.'" Palace is an operating entity as seen from the monthly operating reports, so it's utter folly to say it is ineligible to proceed under subchapter V.

11. Because these additional services require the Debtor to provide substantially more day-to-day activities than just leasing the property, the Debtor is not "a person whose primary activity is the business of owning single asset real estate" and is entitled to proceed under subchapter V.

12.     Kraemer contends that the Debtor's primary activity is owning single-asset real estate because its non-real estate business activities relate to "a totally unrealistic transaction" on the same day the petition was filed. ECF No. 48, 2. The transaction should be avoided and disregarded, says Kraemer in a wholly conclusory way, because (a) the asset transfer is likely a fraudulent transfer, and (b) the transfer was "committed with the actual intent to hinder, delay, or defraud Kraemer." *Id.* at 4-5.

13.     Kraemer's argument -- that a post-petition invalidation of a pre-petition acquisition would leave the Debtor unqualified for relief under subchapter V -- is dubious. The use of present tense in section 101(51B)'s definition of "single asset real estate" suggests that only *current* activities may be considered in determining whether the Debtor is conducting substantial business activities other than operation of property. 2 Bankr. Service L. Ed. § 12:352.

14.     Either way, Palace and 94 North have long operated interconnectedly. In any event, the Debtor's plan will cover debt for both entities as almost all debts are common to each other, ownership is identical and the operation of each has been interdependent. One cannot exist without the other. Additionally, Kraemer holds a judgement in the identical amount against each – they were in effect, co-debtors, one guaranteeing the others debt to Kraemer.

**II.     There is no cause to dismiss this case nor convert it to chapter 7.**

15.     Kraemer requests that the Court find cause, pursuant to 11 U.S.C. § 1112(b), to convert this case chapter 7.[1] It alleges two alternative theories for the Court to find "cause" to convert or dismiss: substantial or continuing loss to or diminution of the estate; and lack of good faith filing.

---

[1] It is unclear whether Kraemer is requesting the Court consider dismissal, also pursuant to section 1112(b), as an alternative remedy. See ECF No. 48, 8

**A.     There is a reasonable likelihood of rehabilitation.**

16.     As the first basis for dismissal or conversion to Chapter 7, Kraemer relies on section 1112(b)(1), which provides that the Court may convert or dismiss a case for cause, including—"continuing loss to or diminution of the estate <u>and</u> absence of a reasonable likelihood of rehabilitation...."11 U.S.C. § 1112(b) (emphasis added). Each of the two elements must be present for this ground to apply. The second "standard under section 1112(b)(1) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." 7 Collier on Bankruptcy 1112.04[5][a]. "When visionary schemes for rehabilitation entail significant risk to creditors without any reasonable probability that the debtor can successfully rehabilitate, conversion or dismissal is generally in order." *In re Original IFPC S'holders, Inc.*, 317 B.R. 738, 743 (Bankr. N.D. Ill. 2004), *quoting In re Great American Pyramid Joint Venture*, 144 B.R. 780, 790–91 (Bankr.W.D.Tenn.1992).

17.     Kraemer has put forth no allegation that would show the Debtor is unable to rehabilitate, nor has it alleged any fact that would show a continuing loss or diminution of the estate. If anything, the Debtor's monthly operating reports filed thus far show that the Debtor's theater operations are beginning to produce income that it has not seen since before the pandemic. Moreover, the addition of the SVOG and WDOA grants (almost a million dollars of non-repayable grants) will surely make feasible the anticipated plan of reorganization, providing working capital necessary to cash flow the reorganized business.

**B.     The Debtor filed this case in good faith.**

18.     In determining "good faith" in the context of section 1112(b), a bankruptcy court should look at the totality of the circumstances and ask whether a debtor is "really trying to pay the creditors to the reasonable limit of his ability, or is he trying to thwart them?" *In re*

*Sparrgrove*, 313 B.R. 283, 288 (W.D. Wis. 2004), quoting *In re Schaitz,* 913 F.2d 452, 453 (7th Cir.1990). There may be lack of good faith if the Court concludes that the Debtor demonstrates an intent to use bankruptcy to *avoid* rather than *reorganize* its debts. *Id.* (emphasis added).

19.  "The [§ 1112(b) good faith filing] inquiry often centers around the debtor's *bona fide* need for a breathing spell to reorganize." *In re Original IFPC S'holders, Inc.*, 317 B.R. 738, 750 (Bankr.N.D.Ill.2004). Congress intended that the filing of a chapter 11 petition and the coincident triggering of the automatic stay would afford debtors a "breathing spell" from "all collection efforts, all harassment, *and all foreclosure actions*." H.R.Rep. No. 95–595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, at 6296–97 (emphasis added).

20.  The Debtor does not dispute that the filing of the petition was done on the eve of a sheriff's sale, but given the substantial grant funds awarded, the fact that there was a likely buyer who would have immediately utilized the theater in its present condition (by bidding approx. $5.4m) when the cost to reconstruct the same is upon information and belief over $14 million, and the Debtor's optimism related to its business plan pivot and results therefrom, it seemed advisable—and in good faith under the Bankruptcy Code--to choose to reorganize.

21.  The Debtor has indicated no other intent but to reorganize its debts, including the debt it owes Kraemer. *See, e.g.*, ECF No. 41 at 2 (explaining the anticipated terms of a plan, including payment of real estate loan and real estate taxes); ECF No. 46 (*Court Proceeding Memo* of October 7, 2021 Status Conference). That the Debtor rearranged its relation (subsumed it) with 94 North in order to file the petition and reorganize its operations and repay its debts does not constitute bad faith; the Debtor filed its petition for many good-faith reasons, and hindering, delaying, and frustrating are not one of them.

22. Kraemer's reliance on *In re Phoenix Piccadilly, Ltd.*, 849 F.2d. 1393 (11th Cir. 1988), is misplaced. First, Phoenix *Piccadilly*'s analysis is applicable (in the 11th Circuit) "in deciding whether to dismiss a single asset real estate case." *In re State Street Houses, Inc.*, 356 F.3d 1345 (11th Cir.2004). As established above, this is not a single asset real estate case.

23. Second, Phoenix Piccadilly, Ltd.'s chapter 11 case was dismissed because the bankruptcy court found "direct and circumstantial evidence of the Debtor's motive in filing its chapter 11 case, that the petition was not filed in good faith, but rather, for the purpose of delaying and frustrating the efforts of the secured creditors to enforce their rights in the property." *In re Phoenix-Piccadilly, Ltd.*, 84 B.R. 843, 845–46 (Bankr. M.D. Fla. 1988). Phoenix Piccadilly's bad faith was shown by testimony that an agent of the debtor threatened to forestall the secured creditor's foreclosure action "for years" by filing a chapter 11 case in a venue far from the foreclosure action and property; indeed, the debtor chose to file its chapter 11 petition in a venue "over 700 miles" from the location of the real estate, employees, creditors, and the pending state court. *Phoenix Piccadilly,* 849 F.2d at 1395 (11th Cir. 1988). This level of egregious frustration of a creditor's efforts are wholly unlike the Debtor's actions in this case.

24. Here, the Debtor's current financial problems were substantially exacerbated by the timing and effect of the COVID-19 pandemic, in particular its timing in relation to the Debtor's evolution, or pivot, and establishment as a newly profitable theater enterprise. The unpaid debt owing to Kraemer on its real property loan is only part of the Debtor's financial issues, all of which are well suited to resolution and reorganization in a subchapter V proceeding.

25. Determining whether the Debtor's filing for relief is in good faith depends largely upon the Court's "on-the-spot evaluation of the debtor's financial condition, motives, and the

local financial realities," and is based on a conglomerate of factors rather than on any single datum. *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

26.     The Debtor filed this case while awaiting the grant funds that will help it recover from over a year of pandemic-induced involuntary closure of its entire operation. The Debtor's transactions with its affiliate—which affiliate's operations have always been necessarily intertwined with the Debtor's—were not shady dealings intended to thwart creditors. Moreover, as the record herein indicates, and as stated above, the ownership between the Debtor and the affiliate are mirror images and Kramer's position is identical with both entities. The Debtor's affiliate is on the cusp of receiving significant grant funds which will be transferred to the debtor that will fund the plan. It is and has been booking acts and hosting events that may have returned the enterprise to profitability, and will certainly do so in the near future. The Debtor will file its plan by the deadline and will continue to exercise good faith effort in this Chapter 11 case as it has from the petition date. A debtor may, in good faith, use the bankruptcy system to give it a breathing spell to become cash-flow solvent when it is, as the Debtor is in this case, balance-sheet solvent. *In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899, 908 (Bankr. N.D. Ill. 2016)

WHEREFORE, the Debtor respectfully requests that the Court: (1) decline Kraemer's request for an order declaring that the Debtor's primary activity is the business of owning single asset real estate, and overrule Kraemer's objection to the Debtor's election to proceed under Subchapter V; and (2) deny Kraemer's motion to convert this case to Chapter 7; and (3) deny Kraemer's request to dismiss this case, if the Court finds that such relief was requested.

Respectfully submitted this 3rd day of November, 2021.

**STEINHILBER SWANSON LLP**
*Attorneys for Debtor*

By: */s/     Paul G. Swanson*
    Paul G. Swanson
    Virginia E. George
    Beth M. Brockmeyer
    Elizabeth L. Eddy
    107 Church Ave.
    Oshkosh, WI 54901
    Tel: (920) 235-6690
    pswanson@steinhilberswanson.com
    vgeorge@steinhilberswanson.com
    bbrockmeyer@steinhilberswanson.com
    eeddy@steinhilberswanson.com